JULIE A. DUNNE, Bar No. 160544
jdunne@littler.com
LARA K. STRAUSS, Bar No. 222866
lstrauss@littler.com
JACQUELINE A. GRUBER, Bar No. 259772
jgruber@littler.com
LITTLER MENDELSON
A Professional Corporation
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
Telephone: 619.232.0441
Facsimile: 619.232.4302

Attorneys for Defendant
NORDSTROM, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER MENDOZA, an individual, on behalf of himself, and all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NORDSTROM, INC., a Washington Corporation authorized to do business in the State of California, and DOES 1 through 100, Inclusive,<br><br>Defendants. | Case No. SACV 10-00109-CJC(MLGx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NORDSTROM, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT OF EACH OF PLAINTIFF'S CLAIMS FOR RELIEF**<br><br>Date: April 25, 2011<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: Hon. Cormac J. Carney |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT

SACV 10-00109-CJC(MLGx)

| | | |
|---|---|---|
| 1 | I. | INTRODUCTION ............................................................................................... 1 |
| 2 | II. | STATEMENT OF RELEVANT FACTS ............................................................. 2 |
| 3 | | A. Plaintiff's Pay, Positions and Hours Worked ............................................ 2 |
| 4 | | B. Plaintiff Never Worked More Than Six Days in a Workweek and |
| 5 | | Admits That The Three Times He Worked More Than Six Days In a Row Were By His Choice ........................................................................ 3 |
| 6 | | C. Plaintiff Admits That His Wage Statements Were Accurate .................... 5 |
| 7 | III. | LEGAL STANDARD FOR SUMMARY JUDGMENT .................................... 6 |
| 8 | IV. | PLAINTIFF'S FIRST CLAIM FOR PAGA PENALTIES FOR |
| 9 | | VIOLATION OF CALIFORNIA ONE DAY'S REST IN SEVEN STATUTES FAILS AS A MATTER OF LAW .................................................. 6 |
| 10 | | D. The Day of Rest Applies Only In a Defined Workweek And |
| 11 | | Plaintiff Never Worked Seven Days In a Workweek ................................ 6 |
| 12 | | E. Nordstrom Did Not Cause Plaintiff to Work More Than Six Consecutive Days; Plaintiff Chose to Do So, Which Defeats His |
| 13 | | Claim .......................................................................................................... 11 |
| 14 | | F. The Accumulation Defense Bars Plaintiff's First Claim ........................ 13 |
| 15 | V. | PLAINTIFF'S SECOND CLAIM FOR VIOLATIONS OF SPLIT SHIFT PROVISIONS FAILS BECAUSE PLAINTIFF EARNED IN |
| 16 | | EXCESS OF MINIMUM WAGE FOR EVERY HOUR WORKED, PLUS AN ADDITIONAL HOUR OF MINIMUM WAGE .............................. 15 |
| 17 | | A. History of the Split Shift Premium and In Excess of Minimum |
| 18 | | Wage Defense ........................................................................................... 16 |
| 19 | | B. Nordstrom Never Owed Plaintiff Any Split Shift Premium Because He Earned Well In Excess of Minimum Wage ....................................... 18 |
| 20 | VI. | PLAINTIFF'S THIRD THROUGH FIFTH CLAIMS DERIVE FROM |
| 21 | | PLAINTIFF'S SECOND CLAIM AND FAIL FOR THE SAME REASON ...................................................................................................... 19 |
| 22 | VII. | PLAINTIFF'S ITEMIZED WAGE STATEMENT CLAIM FAILS |
| 23 | | BECAUSE PLAINTIFF CANNOT SHOW AN INJURY ............................... 20 |
| | | A. The Statutory Framework ........................................................................ 20 |
| 24 | | B. An Injury Requires Harm or Loss Beyond The Wrongful Act or |
| 25 | | Purely Technical Violations ..................................................................... 20 |
| 26 | | C. Plaintiff's Admissions Defeat Any Showing of Injury ........................... 22 |
| 27 | VIII. | PLAINTIFF'S FOURTH CLAIM FOR FAILURE TO TIMELY PAY |
| 28 | | WAGES AT SEPARATION AND WAITING TIME PENALTIES FAILS ........................................................................................................ 22 |

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619 232 0441

1    IX.    PLAINTIFF CANNOT RECOVER PENALTIES FOR ANY
            "SUBSEQUENT" VIOLATIONS AS A MATTER OF LAW ........................ 24

2    X.     CONCLUSION ................................................................................................ 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

ii.

1
2

### TABLE OF AUTHORITIES
**(CONTINUED)**

PAGE

3

*Tidewater Marine W., Inc. v. Bradshaw*
  14 Cal. 4th 557, 59 Cal. Rptr . 2d 186, 198 (1996) ............................................ 9

4

*United Steelworkers of Am. v. Phelps Dodge Corp.*

5

  865 F.2d 1539 (9th Cir. 1989) ....................................................................... 6

6

*Villacres v. ABM Sec. Servs., Inc.*

7

  2009 U.S. Dist. LEXIS 5545, *8-9 (C.D. Cal. 2009), *aff'd* 2010 U.S.
  App. LEXIS 12442 (9th Cir. 2010). ................................................................ 20

8

### STATUTES

9

California Civil Code section 340(a) ...................................................................... 3

10

California Code Civil section 1858 ....................................................................... 13

California Labar Code section 226(a). ............................................................ 5, 20

11

California Labor Code section 510 .................................................................... 7, 13

12

California Labor Code section 554 ...................................................................... 14

California Labor Code sections 550-556 ........................................................... 7, 10

13

California Labor Code sections 551-52 ................................................................ 11

14

### OTHER AUTHORITIES

15

Richard J. Simmons, Wage and Hour Manual for California Employers
  (14th ed. 2010) 154-155 ................................................................................. 14

16

*See* Merriam-Webster Dictionary available at http://www.merriam-
  webster.com/dictionary/cause (last accessed February 3, 2011) ..................... 11

17

18

### REGULATIONS

California Code Regs., title. 8, section 11070(2)(Q) ............................................ 7

19

California Code Regs., title 2, section 11070(4) ................................................... 15

20

California Code Regs., title 8, section 13520 ....................................................... 23

21
22
23
24
25
26
27
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619 232 0441

1

**TABLE OF AUTHORITIES**

2

**PAGE**

3

**CASES**

4
*Amaral v. Cintas Corp.*
163 Cal. App. 4th 1157, 78 Cal. Rptr. 3d 572 (2008). .........................22, 23, 24

5
*Barnhill v. Robert Saunders & Co.*
125 Cal. App. 3d 1, 7-8, 177 Cal. Rptr. 803 (1981)...................................23, 24
6

*Brock v. Carrion, Ltd.*
7
332 F. Supp. 2d 1320 (E.D. Cal. 2004)......................................................9, 16

8
*Cal. Emergency Physicians Med. Group v. PacifiCare of Cal.*
111 Cal. App. 4th 1127, 1133, 4 Cal. Rptr. 3d 583 (2003).............................20

9
*Celotex Corp. v. Catrett*
477 U.S. 317 (1986) .......................................................................................6
10

*Delaney v. Super. Ct.*
11
50 Cal. 3d 785, 268 Cal. Rptr. 753 (1990)........................................................8

12
*Elliot v. Spherion Pac. Work, LLC, et al.*
572 F. Supp. 2d 1169 (C.D. Cal. 2008), *aff'd* 2010 U.S. App. LEXIS
4128 (9th Cir. 2009) .......................................................................................22
13

*Flannery v. Prentice*
14
26 Cal. 4th 572 110 Cal. Rptr. 2d 809 (2001)...................................................8

*Green v. State of California*
15
42 Cal. 4th 254, 69 Cal. Rptr. 3d 390 (2007)...................................................11

16
*Hall v. Time, Inc.*
158 Cal. App. 4th 847, 70 Cal. Rptr. 3d 466 (2008)........................................21

17
*Jasper v. C.R. England, Inc., et al.*
2009 U.S. Dist. LEXIS 34802, *15 (C.D. Cal. 2009)......................................20

18
*Jones v. The Lodge at Torrey Pines Partnership*
42 Cal. 4th 1158 72 Cal. Rptr. 3d 624 (2008)....................................................8
19

*Jordache Enters. v. Brobeck, Phleger & Harrison*
20
18 Cal. 4th 739, 76 Cal. Rptr. 2d 749 (1998)...................................................21

21
*Kimoto v. McDonald's Corp.,*
2008 U.S. Dist. LEXIS 86203 (C.D. Cal 2008)...............................................22

22
*Meyer v. Sprint Spectrum L.P.*
45 Cal. 4th 634, 88 Cal. Rptr. 3d 859 (2009)...................................................21

23
*Murphy v. Kenneth Cole Prods. Inc.*
40 Cal. 4th 1094, 1106, 56 Cal. Rptr. 3d 880 (2007).........................................9
24

*Pineda v. Bank of Am N.A.*
25
50 Cal. 4th 1389, 117 Cal. Rptr. 3d 377 (2010)................................................8

26
*Steinhart v. County of Los Angeles*
47 Cal. 4th 1298 104 Cal. Rptr. 3d 195, 218 (2010);........................................8

27
*Steketee v. Lintz, et al.*
38 Cal. 3d 46, 210 Cal. Rptr. 781 (1985).........................................................21
28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619 232 0441

iii.

## I.   INTRODUCTION

Plaintiff's complaint boils down to two alleged wage violations – alleged failure to provide one day's rest in seven and alleged failure to pay split shift premiums – along with attendant penalties.  As explained below, Plaintiff's one day's rest in seven and split shift premium claims fail as a matter of undisputed fact and law, and consequently, Plaintiff's derivative penalty claims fail as well.  Plaintiff's derivative claims also fail for independent reasons.

Plaintiff's first claim alleges violations of California's one day's rest in seven laws, which prohibit an employer from causing or requiring an employee to work seven consecutive days in a workweek.  The claim fails for at least three reasons.  First, the undisputed facts show Plaintiff never worked seven consecutive days in a workweek.  Second, Plaintiff admits that he voluntarily chose to work more than six consecutive days to make extra money.  Nordstrom never caused or required him to work more than six consecutive days.  Third, Plaintiff admits that he received the equivalent of one day's rest in seven in each month that he worked more than six days in a row, which offers a complete defense even if Nordstrom had caused the additional work days.

Plaintiff's second claim for relief is for an alleged violation of California's split shift premium laws.  Those laws state that when an employer requires an employee to work two separate shifts divided by an unpaid, non-working break of an hour or more (other than for a bona fide meal period), the employer must pay the employee at least minimum wage for every hour worked, plus an additional hour of minimum wages.  The undisputed facts establish that on each and every workday that Plaintiff claims he worked a split shift, he received well in excess of minimum wage for every hour worked, plus an additional hour of minimum wages.

Plaintiff's third through fifth claims – for alleged failure to provide accurate itemized wage statements, failure to pay all wages due on termination and unfair business practices – all derive from Plaintiff's first and second claims and fail for the

LITTLER MENDELSON
A Professional Corporation
501 W. Broadway
Suite 900
San Diego, CA  92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT          1.          SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

1  same reasons.  Plaintiff's third claim, for alleged failure to provide accurate itemized

2  wage statements, independently fails because Plaintiff admits that Nordstrom provided

3  him with accurate wage statements and that he never suffered any injury as a result of

4  his wage statements.  Plaintiff's fourth claim, for alleged failure to pay all wages due

5  on termination, fails because at a minimum Nordstrom's alleged failure to pay all

6  wages due on termination arises from a good faith dispute of law.

7      For these reasons, Nordstrom requests the Court enter judgment in Nordstrom's

8  favor and against Plaintiff on each of Plaintiff's causes of action.

9  **II.    STATEMENT OF RELEVANT FACTS**

10     **A.    Plaintiff's Pay, Positions and Hours Worked**

11     Nordstrom   operates   retail   department   stores   throughout   California.

12  (Declaration of Cami Blumenthal ("Blum. Decl."), ¶ 2.)  Nordstrom employed

13  Plaintiff in California from March 30, 2007 through August 15, 2009.  Nordstrom laid

14  Plaintiff off due to lack of work.  (Declaration of Lara K. Strauss ("Strauss Decl."),

15  Ex. B (Pl. Depo.), 41:16-23, 48:1-49:3, Exs. 5, 6.)

16     Nordstrom originally hired Plaintiff as a barista in the espresso bar, or E-Bar, at

17  its San Francisco Centre store. (Strauss Decl., Ex. B (Pl. Depo.), 49:16-22.)  In mid-

18  June 2007, Plaintiff transferred to the E-Bar at Nordstrom's Horton Plaza store in San

19  Diego, where he continued to work as a barista.  (Strauss Decl., Ex. B (Pl. Depo.),

20  67:2-7; 67:23-24.)   In April 2009, Plaintiff transferred to a sales representative

21  position in the Cosmetics Department at the Horton Plaza store. (Strauss Decl., Ex. B

22  (Pl. Depo.), 71:1-4.)

23     As a barista, Plaintiff earned an hourly wage.  From his hire date to November

24  15, 2007, Plaintiff earned $10.00 per hour.  (Blum. Decl., ¶ 4; Strauss Decl., Ex. B (Pl.

25  Depo.), 65:14-15.)  From November 16, 2007, to March 31, 2008, Plaintiff earned

26  $10.25 per hour.  (Blum. Decl., ¶ 4.)  From April 1, 2008, to April 8, 2009, Plaintiff

27  earned $10.50 per hour.  (Blum. Decl., ¶ 4; Strauss Decl., Ex. B (Pl. Depo.), 70:19-

28  22.)  When he moved to the Cosmetics Department, Plaintiff earned an hourly wage

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT
Firmwide:98741810.10 058713.1017                    2.                    SACV 10-00109-CJC(MLGx)

1  plus commissions.  Beginning April 9, 2009, through his termination, Plaintiff earned
2  $11.50 per hour, plus 3% commission.  (Blum. Decl. ¶ 4; Strauss Decl., Ex. B (Pl.
3  Depo.), 71:1-4.)

4  **B.     Plaintiff Never Worked More Than Six Days in a Workweek and**
        **Admits That The Three Times He Worked More Than Six Days In a**
5        **Row Were By His Choice**

6  Plaintiff alleges that he worked more than six consecutive days on three
7  occasions during the one-year limitations period (December 22, 2008 until his
8  separation) applicable to his first cause of action.[1]  (Strauss Decl., Ex. B (Pl. Depo.),
9  191:24-192: 24.)  Plaintiff could not recall the actual dates of each occasion at his
10  deposition (Strauss Decl., Ex. B (Pl. Depo.), 107:7-11), but consistent with these
11  allegations, Plaintiff's time records reflect three occasions when he worked more than
12  six days in a row during his employment:

13      • Monday, January 26, 2009 through Thursday, February 5, 2009 (11 days)
14      • Monday, March 23, 2009 through Sunday, March 29, 2009 (seven days)
15      • Tuesday, March 31, 2009 through Tuesday April 7, 2009 (eight days)

16  All three of these occasions fell within the period that Plaintiff was working as
17  a barista in the E-Bar under supervisor Larry Dare.  (Strauss Decl., Ex. B (Pl. Depo.),
18  139:5-10; 149:25-150:2; 3-11. Ex. 7).

19  On each occasion when Plaintiff worked more than six consecutive days,
20  Nordstrom had scheduled Plaintiff to work only five consecutive days.  Specifically:

21
22
23
24
25

26  _____

27  [1] Plaintiff has pled his first claim for violation of California's one day's rest in seven
statutes through the California Private Attorneys General Act ("PAGA"), which is
28  subject to a one-year statute of limitations.  *See* Cal. Civ. Code § 340(a); (Strauss
Decl., Ex. A, ¶ 3(a) (alleging claim based on a one-year statute of limitations).)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA  92101-3577
619.232.0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT                    3.                    SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

- From January 26 through February 5, 2009, Nordstrom had scheduled Plaintiff off on January 25, January 31, and February 1, 2009. (Dare Decl. ¶ 2, Ex. A.)

- From March 23 through March 29, 2009, Nordstrom had scheduled Plaintiff off on March 27, and March 28, 2009. (Dare Decl. ¶ 2, Ex. A.)

- From March 31 through April 7, 2009, Nordstrom had scheduled Plaintiff off on April 3 and April 4, 2009. (Dare Decl ¶ 2, Ex. A.)

Had Plaintiff taken his scheduled days off, he would have worked no more than five consecutive days.

In 2009, Plaintiff was trying to earn more money and needed to pick up extra shifts when he worked for Nordstrom. (Strauss Decl., Ex. B (Pl. Depo.), 79:20-83:2, 160:18-161:16.)  On those occasions when Plaintiff worked more than six consecutive days, he did so because other employees in the E-Bar quit unexpectedly or failed to show up to work without notice.  (Strauss Decl., Ex. B (Pl. Depo.), 106:7-107:5; 155:16-156:9.)  Plaintiff would then volunteer to take the shifts in order to earn extra money.   (Strauss Decl., Ex. B (Pl. Depo.), 79:20-83:2.)[2]   By Plaintiff's own admission, no one at Nordstrom ever told him he had to work the additional days. (Strauss Decl., Ex. B (Pl. Depo.), 147:11-18; Dare Decl., ¶ 3.)  He always had the option to refuse.  (Id.)

In addition to picking up extra E-Bar shifts, Plaintiff also sought out extra work in other departments that he heard about from other employees.  He proactively requested approval from Dare to work the extra shifts.  (Strauss Decl., Ex. B (Pl. Depo.), 144:2-145:12.)  Plaintiff never complained about working seven consecutive days. (Strauss Decl., Ex. B (Pl. Depo.), 106:4-6; 113:15-22; 114:2-5.)

---

[2] Plaintiff further testified that he worked additional days to show that he was a dependable employee sand could be promoted. (Strauss Decl., Ex. B (Pl. Depo.), 156:5-9, 158:5-13.)  Plaintiff requested additional shifts to participate in store inventory for the same reasons. (Strauss Decl., Ex. B (Pl. Depo.), 160:18-25; 161:1-9.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT                    4.                    SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

When Plaintiff worked more than seven days in a row, the days were split between work weeks. They did not span seven days straight in the Nordstrom defined work week, which runs from Sunday through Saturday. (Strauss Decl., Ex. B (Pl. Depo.), 107:18-25; 108:1-12; Blum. Decl., ¶ 5.) In March of 2009, Dare advised Plaintiff that he could not work more than five days in a week. (Strauss Decl., Ex. B (Pl. Depo.), 109:23-25; 110:2-6.) After that instruction, Plaintiff never worked more than five days in a workweek in the E-Bar again. (Strauss Decl., Ex. B (Pl. Depo.), 112:17-19.) Plaintiff also cannot recall any incidents where Nordstrom scheduled him to work more than five days in a workweek after he transferred to Cosmetics, which is consistent with Plaintiff's time records. (Strauss Decl., Ex. B (Pl. Depo.), 117:12-15.)

**C.    Plaintiff Admits That His Wage Statements Were Accurate**

Nordstrom provides itemized wage statements to employees every pay period. *See* Cal. Lab. Code § 226(a). Plaintiff regularly reviewed his wage statements and could not identify any inaccuracies. He testified as follows at his deposition:

- He usually glanced at his paycheck to "size it up, see if it's consistent." (Strauss Decl., Ex. B (Pl. Depo.), 87:4-9.)

- He would spend a couple minutes looking at his paychecks when he received them. (Strauss Decl., Ex. B (Pl. Depo.), 88:10-21.)

- He even used a calculator to verify his paychecks four or five times. (Strauss Decl., Ex. B (Pl. Depo.), 88:22-25; 89:1.)

- He could not think of any time when he received a paycheck or wage statement that was not right. (Strauss Decl., Ex. B (Pl. Depo.), 91:11-21.)

Overall, Plaintiff described his paychecks as "pretty accurate" (Strauss Decl., Ex. B (Pl. Depo.), 87:24-25.) Plaintiff also admitted at deposition that he was not confused about his wage statements and that he could have talked to human resources if he had questions. (Strauss Decl., Ex. B (Pl. Depo.), 92:11-25; 93:1-6.)

LITTLER MENDELSON
A Professional Corporation
501 W. Broadway
Suite 900
San Diego, CA  92101-3577
619.232.0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT          5.          SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Where "[t]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," a court should grant summary judgment. Fed. R. Civ. P. 56(c). A party moving for summary judgment has the burden of demonstrating the absence of a genuine issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party satisfies this burden, the opposing party can only defeat summary judgment if the party demonstrates specific facts sufficient to show a genuine issue for trial. *See id.* at 323-324. "A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989). Plaintiff cannot show triable issues of fact on any of his claims and so cannot survive summary judgment.

## IV.   PLAINTIFF'S FIRST CLAIM FOR PAGA PENALTIES FOR VIOLATION OF CALIFORNIA ONE DAY'S REST IN SEVEN STATUTES FAILS AS A MATTER OF LAW

In his first claim, Plaintiff alleges that Nordstrom owes him penalties under the PAGA for violations of California's one day's rest in seven statutes. He contends that because he worked more than six consecutive days on three occasions, Nordstrom violated the one day's rest in seven statutes. (Strauss Decl., Ex. A (Complaint), ¶ 4.1.) He is wrong because under the plain language, a violation only occurs if an employee works more than six days in a workweek and is required to work the consecutive days. Even if an employer requires the work, the statutes offer a complete defense so long as the employee receives the equivalent of one day's rest in seven over a month.

### D.   The Day of Rest Applies Only In a Defined Workweek And Plaintiff Never Worked Seven Days In a Workweek

Division 2, part 2, chapter 1 of the California Labor Code consists of Labor Code sections 500-558 and establishes California's general provisions for working

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT
Firmwide:98741810.10 058713.1017

6.

SACV 10-00109-CJC(MLGx)

hours.  It sets forth rules on the number of hours employees work and the wages they are entitled to for those work hours.  *See, e.g.,* Cal. Lab. Code §§ 510 (establishing when employers pay overtime); 512 (establishing meal period provisions).   The chapter encompasses California's one day's rest in seven statutes – California Labor Code section 550-556.  Section 551[3] states that each employee "[i]s entitled to one day's rest therefrom in seven."  Section 552 provides that "no employer of labor shall cause his employees to work more than six days in seven."  Sections 554 and 556 establish exemptions to the one day's rest in seven provisions.

California courts have not yet weighed in on the meaning of Sections 551 and 552, but the statute and its placement within the Labor Code demonstrate that to measure one day's rest in seven compliance, courts must look to the defined, fixed seven-day workweek, not a rolling period.  *See* Cal. Lab. Code §§ 550-556.  An employee is entitled to one day of rest in each workweek.  As long as he receives it or an exception applies, no violation occurs.  Because Plaintiff never worked seven days in Nordstrom's defined Sunday – Saturday workweek, he cannot show any violation.

Sections 551 and 552 both discuss one day's rest "in seven." The seven-day period addressed in division 2, part 2, chapter 1 of the California Labor Code is the defined workweek set forth in Section 500(b).  Section 500 states that "for purposes of this chapter, the following terms shall have the following meanings" and defines "workweek" and "week" to mean "[a]ny seven consecutive days, starting with the same calendar day each week. 'Workweek' is a fixed and regularly recurring period of 168 hours, seven consecutive 24-hour periods." Cal. Lab. Code § 500(b); *see also* Cal. Lab. Code § 510 (applying same definition in applying seventh-day overtime premiums); Cal. Code Regs., tit. 8, §11070(2)(Q) (setting forth same definition).  The chapter does not contain any other reference to a seven-day period to which the "in seven" language in Sections 551-52 could possibly refer.

---

[3] All section references are to the California Labor Code unless otherwise noted.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA  92101 3577
619 232 0441

When interpreting a California statute, courts must focus on the words in the statute to ascertain their meaning and consider statutes within their overall statutory framework, not in isolation. *See Flannery v. Prentice*, 26 Cal. 4th 572, 578, 110 Cal. Rptr. 2d 809, 863 (2001) ("[w]e do not consider the statutory language in isolation. [] Rather, we look to the 'entire substance of the statute' . . . in order to determine the scope and purpose of the provision . . . .' [] We avoid any construction that would produce absurd consequences.") (citations omitted). It is a basic rule of statutory construction that courts "[m]ust harmonize code sections relating to the same subject matter and avoid interpretations that render related provisions nugatory." *Steinhart v. County of Los Angeles*, 47 Cal. 4th 1298, 1325, 104 Cal. Rptr. 3d 195, 218 (2010); *see also Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 117 Cal. Rptr. 3d 377 (2010) ("Thus, we avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend.") (citations omitted).  Moreover, courts must assume that each word in a statute has meaning and avoid interpretations that would render words meaningless. *See Jones v. The Lodge at Torrey Pines Partnership,* 42 Cal. 4th 1158, 1184, 72 Cal. Rptr. 3d 624, 645 (2008) (noting that construing words in a statute in way that takes away any meaning is disfavored); *Delaney v. Super. Ct.*, 50 Cal. 3d 785, 798-99, 268 Cal. Rptr. 753, 759 (1990) ("Significance should be given, if possible, to every word of an act. Conversely, a construction that renders a word surplusage should be avoided").

An interpretation that measures one day's rest in seven compliance based on a rolling period of calendar days would take Sections 551-52 out of context and render the phrase "in seven" meaningless in violation of established statutory construction principles.  Had the Legislature wanted to apply a rolling calendar period, it would not have included the statutes within the purview of chapter 2 or would have provided for a different definition.  The "in seven" language also shows that what matters is a seven-day period, not an eight-day or a ten-day period.  The only reason a seven day period would matter is because the defined workweek is a seven-day period.

LITTLER MENDELSON
A Professional Corporation
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION FOR SUMMARY JUDGMENT
Firmwide:98741810.10 058713.1017

8.

SACV 10-00109-CJC(MLGx)

1    Section 556, which provides an exception to the one day's rest in seven statutes

2  for part-time employees, supports this interpretation.  It provides: "Sections 551 and

3  552 shall not apply to any employer or employee when the total hours of employment

4  do not exceed 30 hours ***in any week*** or six hours in any one day thereof."  Cal. Lab.

5  Code § 556 (emphasis added).  The phrase "in any week" triggers the definition of

6  "week" provided in Section 500(b) as a fixed, seven-day period.  It would be

7  nonsensical to measure an exception to the one day's rest in seven rules based on the

8  defined workweek in Section 500 and, at the time, use some different measurement

9  period for Sections 551-52.  The reference in Section 556 to the defined week thus

10  requires an interpretation of Sections 551-52 that applies that definition.

11    The California Division of Labor Standards Enforcement ("DLSE") has also

12  adopted this framework for the one day's rest in seven statutes in its 2002 Update Of

13  The DLSE Enforcement Policies and Interpretations Manual (Revised) ("DLSE

14  Manual").  The Court may look to DLSE interpretations and policies as persuasive

15  authority, even if such policies are not binding.  *See Brock v. Carrion, Ltd.*, 332 F.

16  Supp. 2d 1320, 1329 (E.D. Cal. 2004) (supporting the use of the DLSE Manual for

17  guidance in interpreting Section 1182.8, while also looking to the clear statutory

18  language); *see also Murphy v. Kenneth Cole Prods. Inc.*, 40 Cal. 4th 1094, 1106, 56

19  Cal. Rptr. 3d 880, 888 (2007) (noting that while not binding on a court, the DLSE's

20  construction of a statute is entitled to respect);  *see also Tidewater Marine W., Inc. v.*

21  *Bradshaw*, 14 Cal. 4th 557, 577, 59 Cal. Rptr . 2d 186, 198 (1996) (acknowledging

22  that even if a court does not give weight to an agency interpretation, it should consider

23  whether that interpretation is correct).

24    The DLSE Manual, which discusses a modification to the Wage Orders to

25  eliminate an exemption from overtime for individuals who worked 30 or fewer hours

26  in a workweek and 6 or fewer hours per day, states:

27        48.3 Work On Seventh Day In Workweek. Formerly the IWC orders had
         language permitting employment of 7 days in a workweek, "with no
28        overtime pay required" provided the total of hours of employment do not

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA  92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT                    9.                    SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

exceed 30 in the week or 6 in any one day. ***In other words, such employees were exempt from the seventh day of rest requirement and the seventh day of work premium pay requirement if the 30 in the week or 6 in any one day test was met.*** Such exemptions, unless repealed, remained valid despite the provisions of Labor Code § 510(a) by virtue of the language of Labor Code § 515(b )(2). (Emphasis added.)

(Strauss Decl., Ex. G; Request for Judicial Notice). The highlighted language shows that the DLSE defines the seventh day of rest requirement and seventh day overtime premiums the same way – based on the fixed, seven-day workweek, not a rolling seven-day period. Cal. Lab. Code §§ 550-556.

Nordstrom's defined workweek is the seven-day period from Sunday through Saturday. (Blum. Decl., ¶ 5.) As Plaintiff's time records and deposition admissions show, the three occasions when Plaintiff worked more than six consecutive days spanned two different workweeks. (Strauss Decl., Ex. B (Pl. Depo.), 107:18-25; 108:1-12.; Ex. 7, Blum. Decl., ¶ 3.). When broken up by week according to Nordstrom's defined workweek, Plaintiff's schedule on those three occasions was as follows:

- Monday, January 26, 2009 though Saturday, January 31, 2009 (six days) and Sunday, February 1, 2009 through Thursday, February 5, 2009 (five days).
- Monday, March 23, 2009 though Saturday, March, 28, 2009 (six days) and Sunday, March 29, 2009 (one day).
- Tuesday, March 31, 2009 through Saturday, April 4, 2009 (five days) and Sunday, April 5, 2009 though Tuesday April 7, 2009 (three days).

Accordingly, although Plaintiff worked more than six days in a row three times, he never worked seven consecutive days in Nordstrom's defined seven-day workweek. (Strauss Decl., Ex. B (Pl. Depo.), Ex. 7; Blum. Decl., ¶ 3.) Plaintiff had a day of rest in each workweek and so cannot possibly show any violation of Section 551-552. His first claim, including the underlying statutory claim and the penalties claim under the PAGA, thus fails as a matter of law.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA  92101 3577
619.232.0441

DEFENDANT'S MPA ISO MOTION FOR SUMMARY JUDGMENT
Firmwide:98741810.10 058713.1017

10.

SACV 10-00109-CJC(MLGx)

**E.     Nordstrom Did Not Cause Plaintiff to Work More Than Six Consecutive Days; Plaintiff Chose to Do So, Which Defeats His Claim**

Under Sections 551-52 an employee has a right to a rest day in each seven-day workweek.  However, an employer need not force an employee to take the rest day(s).  As long as an employer makes the rest day available, it has complied in full with its one day's rest in seven obligations.  *See* Cal. Lab. Code §§ 551-52.  Despite the dearth of California decisions addressing Sections 551-52, a court need not look any further than the statutes themselves for this interpretation.  As the California Supreme Court has consistently recognized, the unambiguous, common meaning of statutory language controls:

> Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent. [Citation.]

*Green v. State of California,* 42 Cal. 4th 254, 260, 69 Cal. Rptr. 3d 390, 393-94 (2007) (citations omitted).

Section 551 specifically states "Every person employed in any occupation of labor *is entitled to* one day's rest therefrom in seven."  Cal. Lab. Code § 551 (emphasis added).   Section 552 reads: "no employer of labor *shall cause* his employees to work more than six days in seven."  Cal. Lab. Code § 552 (emphasis added).  Following statutory construction principles, ordinary definitions of "entitled to" and "cause" control and establish what the statute means.  "Cause" means "to serve as a cause or occasion of (i.e. cause an accident) or to compel by command, authority or force. *See* Merriam-Webster Dictionary available at http://www.merriam-webster.com/dictionary/cause (last accessed February 3, 2011).  "Entitle" means "to furnish with proper grounds for seeking or claiming something." *See id.* at http://www.merriam-webster.com/dictionary/entitle. "Furnish" in turn means "supply" or "give." *See id.* at http://www.merriam-webster.com/dictionary/furnish.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA  92101 3577
619.232.0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT                    11.                    SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

The above language shows that employees have a right to be furnished with one day's rest in seven, but can choose to waive or forgo that right and work extra shifts without triggering any statutory violation.  In that situation, the employee has caused the extra days of work, not the employer and the employee has not lost the entitlement.   A violation will only occur if an employer, compels or forces an employee to miss one day's rest in seven.[4]

Here, the three times Plaintiff worked more than six days in a row were all in the E-Bar under Dare's supervision.  (Strauss Decl., Ex. B (Pl. Depo.), 139:5-10; 149:25; 150:1-2; 3-11 Dare Decl., ¶ 2, Ex. A.)  As Plaintiff's schedules show, Dare did not schedule Plaintiff to work more than six consecutive days. Dare scheduled him to work only five consecutive days on those occasions and at all times. (Strauss Decl., Ex. B (Pl. Depo.), 136:9-25; 150:3-10; 154:8-23; Dare Decl., ¶¶ 2-3, Ex. A.)  Instead, *Plaintiff* chose to work more than six consecutive days because he needed extra money.  (Strauss Decl., Ex. B (Pl. Depo.), 79:20-83:2.)  *Plaintiff* voluntarily gave up his entitlement and caused the extra days of work, not Nordstrom.[5]  (Dare Decl., ¶¶ 2-3; Strauss Decl., Ex. B (Pl. Depo.), 79:20-83:2.)  Nordstrom thus did not violate California's one day's rest in seven provisions on the occasions at issue.

Any contrary interpretation of Sections 551 and 552 – whether to suggest that an employer "may not permit" an employee to work seven consecutive days or otherwise bears the burden of "ensuring" that employees do not work more than six consecutive days – would fly in the face of both the plain language of the statutes and the underlying statutory scheme.  The plain language states that an employer "shall

---

[4]   Significantly, there is no California authority even remotely suggesting that the terms "cause" and "is entitled" as set forth in California's one day's rest in seven provisions means anything to the contrary, as Nordstrom expects Plaintiff to try to argue.  No authority defines "cause" as "permit" or defining entitle as "must receive."
[5]   That fact that Plaintiff never complained at any point about how many days he worked or working too many days in a row further demonstrates the voluntary nature of the extra days beyond those scheduled. (Strauss Decl., Ex. B (Pl. Depo.), 106:4-6; 113:15-22; 114:2-5.)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619 232 0441

1   not cause," its employees to work more than six days in seven; the statute does not say

2   an employer "shall not permit." Interpreting the statute as "shall not permit" would

3   improperly insert language the Legislature did not use. Cal. Code Civ. Proc. § 1858.

4       The placement of Sections 551-552 in the California Labor Code Division 2,

5   further shows that the Legislature must have intended employees to be able to work

6   more than six days in a row by their own choice without triggering a one day's rest in

7   seven violation. Sections 551-552 fall within part 2, chapter 1 of the California Labor

8   Code, which expressly permits employees to work more than six consecutive days.

9   California Labor Code section 510:

10          Any work in excess of eight hours in one workday and any work in
            excess of 40 hours in any one workweek ***and the first eight hours***
11          ***worked on the seventh day of work*** in any one workweek shall be
            compensated at the rate of no less than one and one-half times the regular
12          rate of pay for an employee. Any work in excess of 12 hours in one day
            shall be compensated at the rate of no less than twice the regular rate.
13

14   *See* Cal. Lab. Code § 510 (emphasis added). Thus the Legislature plainly authorized

15   work of more than six consecutive days because it expressly provided for work on the

16   seventh consecutive day in a workweek subject to an enhanced overtime rate.

17   Sections 552 and 510 could not – as required by the rules of statutory construction –

18   be harmonized if 552 prohibited an employer from permitting an employee to work

19   seven consecutive days but Section 510 permitted employers to have employees work

20   for seven consecutive days in a workweek so long as it paid them a seventh day

21   premium. Accordingly, a violation only occurs if an employer requires an employee

22   to work more than six days in a row. Because Nordstrom never required Plaintiff to

23   work more than six days in a row, Plaintiff cannot show any violation. Accordingly,

24   the Court should grant summary judgment in Nordstrom's favor.

25          **F.     The Accumulation Defense Bars Plaintiff's First Claim**

26       As an additional and independent ground, Nordstrom seeks summary judgment

27   of Plaintiff's first claim based on the accumulation of days' defense set forth in

28   Section 554. Even if Plaintiff could establish that his personal election to work more

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT
Firmwide:98741810.10 058713.1017

13.

SACV 10-00109-CJC(MLGx)

than six consecutive days constitutes a violation of Sections 551 and 552, Nordstrom has a complete defense to Plaintiff's claim under Section 554. The statute provides:

> Nothing in this chapter shall be construed to prevent an accumulation of days of rest when the nature of the employment reasonably requires that the employee work seven or more consecutive days, if in each calendar month the employee receives days of rest equivalent to one day's rest in seven.

*See* Cal. Lab. Code § 554.

Under Section 554, if an employee works seven or more consecutive days because the nature of the work warrants the extra days, no statutory violation occurs as long as the employee receives the equivalent of a day of rest for each seven-day period in that month. The longest calendar month is 31 days. 31 divided by seven equals 4.4. Accordingly, as long as an employee has 5 or more days off in the month where he or she works more than six of seven days, the employee will satisfy the accumulation defense. *See id.*

Here, as Plaintiffs' time records show and Plaintiff admitted at deposition, he had at least six rest days in each of the months when he worked more than six days in a row. (Strauss Decl., Ex. B (Pl. Depo.), 141:15-21; 151:8-16; Ex. 7; Blum. Decl., ¶ 3.). Even if Plaintiff tried to show that he did not voluntarily work more than six days in a row because business needs meant that he had to work the extra days, his claim still fails. Short staffing, employees calling in sick, increased work levels during inventory or similar events would all reasonably require employees to work beyond their regular schedule under Section 554. *See* Richard J. Simmons, Wage and Hour Manual for California Employers (14th ed. 2010) 154-155 ("As amended, Section 554 expressly confirms the ability of employees to work seven or more consecutive days and accumulate their days of rest when the nature of the employment reasonably requires it.") To the extent that Plaintiff might point to any such reasons as compelling the additional work, then the accumulation defense applies and bars the claim as a matter of law.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT
Firmwide:98741810.10 058713.1017

14.

SACV 10-00109-CJC(MLGx)

## V. PLAINTIFF'S SECOND CLAIM FOR VIOLATIONS OF SPLIT SHIFT PROVISIONS FAILS BECAUSE PLAINTIFF EARNED IN EXCESS OF MINIMUM WAGE FOR EVERY HOUR WORKED, PLUS AN ADDITIONAL HOUR OF MINIMUM WAGE

In his second claim, Plaintiff contends that Nordstrom owed him and failed to pay him split shift premiums under California law when he worked split shifts. His claim fails because the split shift rule is a minimum wage rule. When an employee, like Plaintiff, earns more than minimum wage plus an extra hour at the minimum wage rate on a split shift workday, he has no entitlement to split shift pay.

The California Labor Code does not address split shifts or affiliated premiums. Employees' entitlement to split shift premiums derives solely from the California Wage Orders and falls within the minimum wage provisions of the Wage Order. Wage Order No. 7, section 2(M) defines split shift as follows: "'Split shift' means a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."

Wage Order No. 7, section 4, which is the "Minimum Wage" provides:

4. MINIMUM WAGES

(A) Every employer shall pay to each employee wages not less than seven dollars and fifty cents ($7.50) per hour for all hours worked, effective January 1, 2007, and not less than eight dollars ($8.00) per hour for all hours worked, effective January 1, 2008, except:

 * * *(B) Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise.

(C) When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment.

 * * *

See Cal. Code Regs., tit. 2, § 11070(4) (emphasis added).[6]  Subsection (C) in the above language entitles an employee to payment of one hour of wages at the then-

---

[6] Wage Order No. 7 is set forth at the California Code of Regulations, title 2, section 11070.  For ease of reference, a copy of Wage Order 7 in the format published by the DLSE is also attached to the Strauss Declaration as Exhibit F.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA  92101-3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT                    15.                    SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

current minimum wage, but only "in addition to the minimum wage for the workday." An employer thus only owes an employee a separate split shift premium if the employee has not already earned minimum wage for the hours in the workday plus one extra hour of pay at the minimum wage rate.  If the employee has earned the equivalent of minimum wage for each hour worked plus one extra hour at the state minimum wage, an employer owes nothing for a split shift.  *See id.* § 11070(4)(C).

## A.    History of the Split Shift Premium and In Excess of Minimum Wage Defense

The placement of the split shift provision within the Minimum Wage section of the Wage Order supports this interpretation.  *See id.*  The history of the split shift premium provision and the California Division of Labor Standards Enforcement's contemporaneous explanation of the provision also supports such an interpretation. The split shift premium pay language appeared in the 1976 version of Wage Order No. 7 as follows: "On any workday in which an employee works a split shift two dollars and fifty cents ($2.50) per workday shall be paid in addition to the minimum wage except when the employee resides at the place of employment." (Strauss Decl., Ex. D (1976 Wage Order); Request for Judicial Notice.)  The 1976 version of the Wage Orders defined split shift the same way that the current version of the Wage Order defines it: "[a] work schedule which is interrupted by non-paid non-working periods established by the employer other than bona fide meal and rest periods."  (Id.)

The 1978 DLSE Operations and Procedures Manual ("1978 Manual") – one of the precursors to its current interpretations manual – provided detailed guidance on the meaning of the split shift provisions in the Wage Orders and should be considered by this Court.  *See Brock*, 332 F. Supp. 2d at 1329  Section 10.48 of the 1978 Manual described split shifts as follows:

> "Split shift" is ***defined*** in the orders (§ 2) as "a work schedule which is interrupted by nonpaid nonworking periods ***established by the employer***, other than bona fide rest or meal periods."  The Commission has stated that if the split schedule is established for the ***convenience of the employee***, the premium need not be paid, and this may occur where students want to attend classes, etc.  However, if all such employees

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT                16.                SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

happen to have shifts which coincide with the employer's busy periods, the situations should be investigated; questionnaires to employees may uncover the facts. *A meal period longer than one hour* also to the *workday*, 24 consecutive hours which begin at the same time (but at any hour) on each calendar day. (§ 2 in 1976 orders.)

The split shift premium is a *flat dollar amount, $2.50* per workday, which did not change with the increase in the minimum wage.

1978 Manual, § 10.48 (emphasis in original) attached to Strauss Decl. as Ex. E; *see also* Nordstrom's Request for Judicial Notice. The 1978 Manual then explained that, based on the Industrial Welfare Commission's statement of the basis regarding split shift premiums, the Wage Orders only require employers to pay split shift premiums in addition to the *minimum wage*, not the employee's *regular rate* as follows:

The IWC emphasized in a statement of basis that the premium is to be paid in addition to the minimum wage for the day, and NOT in addition to whatever regular rate is paid. *If the wage rate is higher than the applicable minimum wage, then excess over the minimum wage is credited toward the split shift premium*.

1978 Manual, § 10.48, attached to Strauss Decl. as Ex. E (emphasis in original).

The 1978 Manual also provided the following example of split shift premium calculations:

Example (a):  Employee earns $2.75 per hour, works 6 hours a day, earns 10¢ per hour more than the minimum (in 1978).  10¢ times 6 hours = 60¢, which is credited against split shift premiums.  $2.50 less 60¢, = $1.90 due for split.  (Note, if employee works a longer days, more is credited against the split shift premium.)

Example (b): Here is another way of figuring the split shift premium for the employee in example (a):

| | |
|---|---|
| Wages paid for workday: | $2.75 x 6 hours = $16.50 |
| Less minimum wage for workday: | $2.65 x 6 hours = $15.90 |
| Credit against split shift premium = | .60 |

$2.50 premium less 60¢ = $1.90 due for split.

*See* March 1978 DLSE Manual, § 10.48.

To provide a more updated example based on the current California minimum wage of $8 per hour, assume an employee works 4 hours in the morning, followed by a 4-hour break, and then worked another 4 hours in the afternoon at a rate

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
601 W. Broadway
Suite 900
San Diego, CA  92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION FOR SUMMARY JUDGMENT
Firmwide:98741810.10 058713.1017

17.

SACV 10-00109-CJC(MLGx)

of $10 per hour.  The premium would then be calculated as follows:

| | | |
|---|---|---|
| Wages paid for workday = | $10 x 8 hours = | $80.00 |
| Less minimum wage for workday = | $8 x 8 hours = | $64.00 |
| Credit against split shift premium = | | $16.00 |

Because the $16.00 credit against the premium exceeds the $8.00 minimum wage, no split shift premium is owed.

## B.  Nordstrom Never Owed Plaintiff Any Split Shift Premium Because He Earned Well In Excess of Minimum Wage

Nordstrom does not owe Plaintiff any split shift premiums because he consistently earned well over California's minimum wage and earned enough on the days when he contends he worked split shifts that he does not qualify for the split shift premiums.  Based on Plaintiff's time records and testimony, Plaintiff worked, at most 11 split shifts.  (Strauss Decl., Ex. B (Pl. Depo.), Ex. 7; Blum. Decl., ¶ 3.)  The remainder of the days that Plaintiff had a break of more than an hour were all bona fide meal periods and so cannot possibly qualify as split shifts.  (Strauss Decl., Ex. B (Pl Depo.), 180:185:11; Ex. 7.)

On each of the days that Plaintiff worked split shifts, he earned more than minimum wage for all hours worked plus an additional hour of pay at the applicable minimum wage rate.  The following chart, which summarizes information from Plaintiff's time records,[7] identifies each day that Plaintiff worked two shifts with a break that does not qualify as a bona fide meal period and Plaintiff's earnings for that day:

---

[7] Although Plaintiff testified at his deposition that he was not certain whether days he worked split shifts while in Cosmetics were captured in his time records, the 3-4 potential split shifts Plaintiff worked while in Cosmetics are captured in the last four entries above.  (Strauss Decl., Ex. B, (Pl. Depo.), 84:4-15.) Nordstrom has also confirmed that it has no additional time records for Plaintiff and that the records attached to the Declaration of Lara K. Strauss are the only records.  (Blum. Decl., ¶ 3.)

LITTLER MENDELSON
A Professional Corporation
501 W. Broadway
Suite 900
San Diego, CA  92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT                    18.                    SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

| Date of Alleged Split Shift | Total Hours for the Workday | Plaintiff's Then Current Hourly Rate* | California Minimum Wage | Actual Hourly Earnings for the Day | Earnings for the Day at Minimum Wage Plus An Hour of Minimum Wage | Split Shift Premium Owed |
|---|---|---|---|---|---|---|
| 5/27/07 | 6.05 | $10.00 | $7.50 | $60.50 | $52.88 | No |
| 9/15/08 | 10.77 | $10.50 | $8.00 | $127.63 | $105.24 | No |
| 9/16/08 | 10.75 | $10.50 | $8.00 | $127.31 | $105.00 | No |
| 10/28/08 | 11.95 | $10.50 | $8.00 | $146.21 | $119.40 | No |
| 10/29/08 | 10.15 | $10.50 | $8.00 | $117.86 | $97.80 | No |
| 10/30/08 | 10.73 | $10.50 | $8.00 | $127.00 | $104.76 | No |
| 1/15/09 | 9.15 | $10.50 | $8.00 | $102.11 | $85.80 | No |
| 4/14/09 | 7.72 | $11.50 | $8.00 | $88.78 | $69.76 | No |
| 4/15/09 | 8.03 | $11.50 | $8.00 | $92.52 | $72.36 | No |
| 4/26/09 | 8.02 | $11.50 | $8.00 | $92.35 | $72.24 | No |
| 6/4/09 | 7.4 | $11.50 | $8.00 | $85.10 | $67.20 | No |

\* Nordstrom has not factored in Plaintiff's commissions, because even without commissions, Plaintiff still earned a sufficient amount to qualify for the defense

Because Plaintiff earned more than minimum wage plus an extra hour at the minimum wage rate on every day that he worked an alleged split shift, he cannot show any entitlement to split shift premiums. His second claim for split shift premiums fails as a matter of law and the Court should therefore grant summary judgment in favor of Nordstrom on the claim.

## VI.   PLAINTIFF'S THIRD THROUGH FIFTH CLAIMS DERIVE FROM PLAINTIFF'S SECOND CLAIM AND FAIL FOR THE SAME REASON

In his third claim, Plaintiff alleges that Nordstrom provided him with inaccurate wage statements because Nordstrom did not pay him split shift premiums and so failed to list those on his wage statements. In his fourth claim, Plaintiff contends that Nordstrom owes him waiting time penalties under California Labor Code section 203 because Nordstrom failed to pay him split shift premiums and so failed to pay him all wages owed at separation. (Strauss Decl., Ex. A, ¶¶ 38-40.) Plaintiff's fifth claim is

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION FOR SUMMARY JUDGMENT
Firmwide:98741810.10 058713.1017

19.

SACV 10-00109-CJC(MLGx)

for unfair business practices[8] and asserts the exact same violations as Plaintiff's second claim. (Strauss Decl., Ex. A, ¶¶ 41-49.)

Plaintiff's third, fourth and fifth claims thus depend on Plaintiff's split shift premium claim. They fail for the same reasons Plaintiff's split shift claim fails.

## VII. PLAINTIFF'S ITEMIZED WAGE STATEMENT CLAIM FAILS BECAUSE PLAINTIFF CANNOT SHOW AN INJURY

### A.   The Statutory Framework

Under Section 226(a), an employer must provide employees with accurate, written itemized statements when it pays them wages. *See* Cal. Lab. Code § 226(a). Section 226(e) permits an employee to sue for Section 226(a) violations and collect penalties, but only if certain requirements are met. Section 226(e) provides:

> An employee *suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)* is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Lab. Code § 226(e) (emphasis added). To pursue a claim under Section 226 (e), a plaintiff must therefore demonstrate "both intentional non-compliance and that he suffered a resulting injury." *Jasper v. C.R. England, Inc., et al.*, 2009 U.S. Dist. LEXIS 34802, *15 (C.D. Cal. 2009); *see also Villacres v. ABM Sec. Servs., Inc.*, No. CV 07-5327-VAP (AGRx), 2009 U.S. Dist. LEXIS 5545, *8-9 (C.D. Cal. 2009), *aff'd* 2010 U.S. App. LEXIS 12442 (9th Cir. 2010).

### B.   An Injury Requires Harm or Loss Beyond The Wrongful Act or Purely Technical Violations

The California Supreme Court has not yet ruled on the showing required for an injury under Section 226(e). However, the California Supreme Court has consistently

---

[8] California Business and Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice." The statute "borrows" violations of other laws and treats them as independently actionable. If the borrowed claim fails, so too does the unfair business practices claim. *See Cal. Emergency Physicians Med. Group v. PacifiCare of Cal.*, 111 Cal. App. 4th 1127, 1133, 4 Cal. Rptr. 3d 583, 591 (2003).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION FOR SUMMARY JUDGMENT                    20.                    SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

1   held in other contexts that an injury is distinct from the wrongful act itself.  The word

2   'injury' signifies both the negligent cause and the damaging effect of the alleged

3   wrongful act and not the act itself.'"  *Steketee v. Lintz, et al.*, 38 Cal. 3d 46, 54, 210

4   Cal. Rptr. 781, 785 (1985); *see also Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634,

5   88 Cal. Rptr. 3d 859 (2009).

6       *Meyer* is particularly instructive.  In *Meyer*, the California Supreme Court

7   interpreted language in the California Consumer Legal Remedies Act ("CLRA")

8   similar to that in Section 226(e).  The CLRA language states, in relevant part: "Any

9   consumer who suffers any damage as a result of the use or employment by any person

10  of a method, act, or practice declared to be unlawful by Section 1770 may bring an

11  action . . . ;" *Id.* at 640.  The California Supreme Court held that the above language,

12  on its face, meant that a CLRA plaintiff had no standing to sue if the unlawful practice

13  did not cause or result in a "tangible increased cost or burden to the consumer."

14  *Meyer*, 45 Cal. 4th at 643.  The same reasoning applies to Section 226(e).  Had the

15  legislature intended that mere receipt of a wage statement with an error supported

16  penalties, it would not have included the phrase "suffering injury" at all.

17      California courts have further defined an "injury" to require a loss or

18  deprivation of money or property.  *See Jordache Enters. v. Brobeck, Phleger &*

19  *Harrison,* 18 Cal. 4th 739, 743, 76 Cal. Rptr. 2d 749 (1998) (noting that an actual

20  injury occurs in a legal malpractice action "when the client suffers any loss or injury

21  legally cognizable as damages"); *see also Hall v. Time, Inc.,* 158 Cal. App. 4th 847,

22  852-55, 70 Cal. Rptr. 3d 466, 468-69 (2008) (holding that plaintiff failed to show

23  injury in fact under California Business and Professions Code section 17200 where

24  injury was hypothetical and recognizing that some expenditure of money, lost money

25  or property, or denial of money is required).

26      Consistent with the above holdings, federal district courts and the Ninth Circuit

27  interpreting Sections 226(a) and (e) have concluded that an employee must

28  demonstrate an actual injury.  Mere receipt of the non-compliant wage statements or

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT                    21.                    SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

1   similar technical violations will not suffice.  *See Elliot v. Spherion Pac. Work, LLC, et*

2   *al.*, 572 F. Supp. 2d 1169, 1179-80 (C.D. Cal. 2008), *aff'd* 2010 U.S. App. LEXIS

3   4128 (9th Cir. 2009) (granting defendants' motion for summary judgment because

4   "even if Defendant's use of a slightly-truncated name on its wage statements may be

5   viewed as a technical violation of §226(a) (8), Plaintiff cannot recover for these

6   violations because she did not 'suffer injury' as a result."); *see also Villacres,* 2009

7   U.S. Dist. LEXIS 5545 at *8-9, *aff'd* 2010 U.S. App. LEXIS 12442 (holding that

8   plaintiff could not seek class certification  based upon a claim under section 226(e)

9   because he presented "no facts showing actual injury"); *Kimoto v. McDonald's Corp.*,

10  2008 U.S. Dist. LEXIS 86203 (C.D. Cal 2008) (granting motion for summary

11  judgment because plaintiff admitted in her deposition that she did not suffer any injury

12  as a result of this error). As these cases demonstrate, a plaintiff must show a loss or

13  deprivation of money or property caused by an inaccuracy in the wage statement.

14      **C.**    **Plaintiff's Admissions Defeat Any Showing of Injury**

15      Plaintiff cannot possibly show an injury based on his itemized wage statements

16  because his admits they were accurate and cannot recall receiving an inaccurate wage

17  statement. (Strauss Decl., Ex. B (Pl. Depo.), 87:24-25, 91:11-21.)  Further, Plaintiff

18  admits that he was not confused by the wage statements, and knew that he could have

19  asked human resources about any concerns, if he had any.  (Strauss Decl., Ex. B (Pl.

20  Depo.), 92:11-93:6.)  Plaintiff thus cannot possibly show any injury resulting from

21  intentionally inaccurate wage statements at the time he received them, precluding him

22  from recovering penalties under Section  226(e).

23  **VIII. PLAINTIFF'S FOURTH CLAIM FOR FAILURE TO TIMELY PAY WAGES AT SEPARATION AND WAITING TIME PENALTIES FAILS**

24      Plaintiff's fourth claim also fails for an independent reason.  Under California

25  law, only willful acts trigger waiting time penalties under Section 203.  *See Amaral v.*

26  *Cintas Corp.*, 163 Cal. App. 4th 1157, 1201-04, 78 Cal. Rptr. 3d 572, 607-09 (2008).

27  "The settled meaning of 'willful,' as used in section 203, is that an employer has

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA  92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT
Firmwide:98741810.10 058713.1017

22.

SACV 10-00109-CJC(MLGx)

intentionally failed or refused to perform an act which was required to be done" *Id.* at 1201. An employer must know that it owes the wages and refuse to pay them. As further explained in the California regulations interpreting Section 203,

> A willful failure to pay wages within the meaning of Labor Code Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due. However, a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203.

> (a) Good Faith Dispute. A "good faith dispute" that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist. Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a "good faith dispute."

Cal. Code Regs., tit. 8, § 13520; *see also Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7-8, 177 Cal. Rptr. 803, 806-07 (1981). The good faith dispute does not have to exist or be articulated at separation. An employer only has to present a good faith dispute at the time the Section 203 issue is litigated. *See Amaral,* 163 Cal. App. 4th at 1203-04 ("Precisely when the employer formulated such a defense is, it seems to us, besides the point").

In *Amaral,* the plaintiffs sought Section 203 penalties for the employer's failure to pay wages under a living wage ordinance that the employer claimed was unconstitutional and so invalid. 163 Cal. App. 4th at 1170-74. The court upheld the constitutionality of the ordinance, but refused to award Section 203 penalties for failure to pay wages under the ordinance. *Id.* at 1201-04. It reasoned that the defendant employer's legal challenge to the living wage ordinance established a good faith dispute about wages, and that the employer therefore did not willfully fail to pay wages under Section 203. *Id.* In *Barnhill,* the employer set off an employee's final wages with a debt that the employee owed to the company. Although California law has been interpreted to prohibit such deductions, *Barnhill* noted that, at the time of the setoff, "[s]everal courts of appeal had expressed the view that setoffs against

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA  92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT                    23.                    SACV 10-00109-CJC(MLGx)
Firmwide:98741810.10 058713.1017

employees' wages were proper" and at least one appellate court decision seemed to suggest an employer had a right to a setoff.  125 Cal. App. 3d at 8-9.  The *Barnhill* court reasoned that the employer could not willfully have withheld wages in light of the ambiguity in the law and denied liability for Section 203 penalties.  *Id.*

Even if Plaintiff could establish that Nordstrom owed him some monies for split shift premiums, he cannot show that Nordstrom "willfully" failed to pay him those amounts.  The above defense to split shifts establishes that Nordstrom, in good faith, did not pay Plaintiff split shift pay because it does not believe that it owes him any split shift pay.   That defeats any willfulness showing under the statute since an employer who disputes in good faith that it owes an employee wages cannot have acted willfully for purposes of Section 203 penalties.  *See* Cal. Code Regs. tit. 8, § 13520; *see also Amaral,* 163 Cal. App. 4th at 1201; *Barnhill*, 125 Cal. App. 3d at 8-9.

## IX. PLAINTIFF CANNOT RECOVER PENALTIES FOR ANY "SUBSEQUENT" VIOLATIONS AS A MATTER OF LAW

In his first, second and third claims, Plaintiff seeks penalties for both initial violations and "subsequent" violations of California's one day's rest in seven statutes, split shift provisions and itemized wage statement statutes.  (Strauss Decl., Ex. A (Complaint),  ¶¶  19(a)-(c), 30(a)-(b), 37.)   Plaintiff, however, cannot recover any "subsequent" violations penalties in this action as a matter of law.  In *Amaral*, 163 Cal. App. 4th 1157, the court held that:

> Until the employer has been notified that it is violating a Labor Code provision (whether or not the Commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware that its continuing underpayment of employees is a "violation" subject to penalties.  However, after the employer has learned its conduct violates the Labor Code, the employer is on notice that any future violations will be punished just the same as violations that are willful or intentional-i.e., they will be punished at twice the rate of penalties that could have been imposed or that were imposed for the initial violation.

*Id.* at 1208-09. An employer thus cannot be held liable for "subsequent" penalties unless and until a ***court or commissioner*** notifies the employer of a legal violation.  Until that occurs, an employer only incurs initial penalties.  No court or

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA  92101 3577
619 232 0441

DEFENDANT'S MPA ISO MOTION
FOR SUMMARY JUDGMENT
Firmwide:98741810.10 058713.1017

24.

SACV 10-00109-CJC(MLGx)

1   commission has ever determined that Nordstrom is failing to pay split shift premiums,

2   is not properly providing rest days to its employees and/or that it is causing employees

3   an injury based on its itemized wage statements.  Plaintiff thus cannot recover any

4   subsequent violations penalties as a matter of law.  The Court should grant summary

5   judgment in favor of Nordstrom on that issue.

6   **X.   CONCLUSION**

7   Plaintiff's first claim fails for three separate reasons: (1) Plaintiff never worked

8   seven consecutive days in a workweek; (2) Nordstrom never caused or required

9   Plaintiff to work more than six consecutive days; and (3) Plaintiff always had an

10  aggregate or accumulation of more than five rest days per month.  Plaintiff's second

11  claim fails because on each day Plaintiff worked an alleged split shift, he earned more

12  than minimum wage for each hour worked, plus an extra hour at minimum wage.

13  Plaintiff's derivative penalties claims fail for the same reason.  Plaintiff's wage

14  statement violation claim also separately fails because Plaintiff admitted that he did

15  not receive inaccurate wage statements that caused him injury.  His claim for failure to

16  timely pay wages fails because Nordstrom could not possibly have acted willfully in

17  not paying Plaintiff split shift pay.  Plaintiff's subsequent penalties claims also fail

18  because no court or commissioner has found that Nordstrom has violated the law in

19  any way with regard to split shift pay and no subsequent penalties apply under there is

20  such a finding.  For these reasons and the reasons set forth above, this Court should

21  grant summary judgment in favor of Nordstrom on all of Plaintiff's claims.

22  Alternatively, the Court should grant summary judgment of each of Plaintiff's claims.

23  Dated:   March 22, 2011

24  /s/ Lara K. Strauss
    JULIE A. DUNNE
    jdunne@littler.com
25  LARA K. STRAUSS
    lstrauss@littler.com
26  LITTLER MENDELSON, P.C.
    Attorneys for Defendant
27  NORDSTROM, INC.

28  Firmwide:98741810.8 058713.1017